UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Suzanne Snaza,                                                      Civil No. 06-3719 (DWF/AJB)

          Plaintiff,

                                                                    **MEMORANDUM**
v.                                                                                   **OPINION AND ORDER**

The City of St. Paul, Minnesota,

          Defendant.

---

Daniel S. Le, Esq., Murphy Law Firm, P.A., counsel for Plaintiff.

Louise Toscano Seeba, Esq., Assistant St. Paul City Attorney, St. Paul City Attorney's Office, Counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant The City of St. Paul ("the City"). In her Complaint, Plaintiff Suzanne Snaza asserts the following causes of action related to the City's denial of a conditional use permit for her property located at 1229 Payne Avenue, St. Paul, Minnesota: (1) denials of substantive due process; (2) denial of equal protection; and (3) inverse condemnation. For the reasons stated below, the City's Motion is granted.

## BACKGROUND

In March 2005, Plaintiff inherited the property located at 1229 Payne Avenue, St. Paul, Minnesota (the "Property"), from her late father, Bernard Snaza. The Property is zoned B3. (Aff. of Louise Toscano Seeba in Supp. of Mot. for Summ. J. ("Seeba

Aff.") ¶ 12, Ex. 11 at STP 0477.)  Within this zoning code, auto sales, auto repair, and auto detailing[1] are only permitted with a conditional use permit ("CUP").  City of St. Paul Legislative Code § 66.421.  Various other uses are, however, permitted without a CUP.  *Id*.

From approximately 1999 until 2005, when he died, Bernard Snaza operated an auto sales business at the Property under a CUP issued by the City.  (*See* Aff. Of Suzanne Snaza ("Snaza Aff.") ¶¶ 5-11.)  The CUP was first issued in 1999 and then reviewed and modified in 2002.[2]  (*Id*. Exs. 1, 2.)  At the time of the 1999 CUP application, at least one member of the Zoning Committee noted on the record that he did not want to grant the CUP for the car lot and then "have it there for eternity."  (Snaza Aff. Ex. 11 at STP 0560.)  In 2002, the City Zoning Committee modified the CUP to provide that "[a]t such time as there is a new owner or operator of this business, a new permit shall be required." (Snaza Aff. Ex. 2.)  In 2005, while Bernard Snaza was ill with cancer, Plaintiff purchased the Property from Bernard Snaza's landlord so that Bernard Snaza would not be evicted.  (*Id*. ¶ 8.)  Plaintiff assisted Bernard Snaza with operating the Property as an auto sales lot and detailing business from 2004 to early 2005, when Bernard Snaza died.

---

[1]   The City Code classifies auto detailing as an auto specialty store.  City of St. Paul Legislative Code § 65.704.

[2]   At the time that Bernard Snaza applied for the CUP, the Planning Commission found that imposition of certain standards related to lot size and the distance of vehicular access from an intersection would result in "exceptional undue hardship" to Bernard Snaza, in light of a three-year lease agreement binding Bernard Snaza to the Property and Bernard Snaza's attempt "to re-establish himself in business after an extended illness." (Pl.'s Ex. 1 at ECF Docs 21-23; Seeba Aff. Ex. 8 at 4; Seeba Aff. Ex. 11 at STP 0556, 0560; *see also* City of St. Paul Legislative Code § 64.300(f) (n.4, *infra*).)

In June 2005, after Bernard Snaza died, Plaintiff applied for a CUP to operate an outdoor auto sales and auto detailing shop on the Property. (Seeba Aff. Ex. 1 at STP 0254.) On July 7, 2005, the Zoning Committee of the St. Paul Planning Commission held a public hearing to review Plaintiff's CUP application. (*Id.* at STP 0266-0267.)

The Zoning Committee considered the testimony of an officer from the City's inspection department that the City had responded to recent complaints about the Property. (Seeba Aff. Ex. 1 at STP 0255-0257, 0266-0267.) Specifically, the City had received complaints about illegally-parked cars, issues with allegedly illegal operation of a towing business, high traffic, and broken glass in the alley near the Property. (Seeba Aff. Ex. 1 at STP 0255-0257; Ex. 2; Ex. 18 at STP 0740, 0812-0813.) Neighbors and the executive director of the community council spoke in opposition to the CUP application at the Zoning Committee hearing. (Seeba Aff. Ex. 1 at STP 0266-0267.) In addition, the Zoning Committee Staff Report advised that the Property did not meet the City Code standards required for an auto-detailing business or outdoor auto sales. (Seeba Aff. Ex. 1 at STP 0258-0261, ¶¶ H(4)(a), (4)(c), (5)(b) and (5)(d); *see also* City of St. Paul Legislative Code at §§ 65.703, 65.704, 65.706.) The Property did not meet the minimum lot size[3] and the vehicle access off an adjacent street was not at least sixty feet from an intersection. (*Id.* at ¶¶ (4)(c) & 5(d) and ¶¶ (4)(a) and (5)(b).) Ultimately, the Zoning

---

[3] According to the City, a lot split occurred in March 2005 by which the lot size of the Property decreased by 1,540 square feet. Plaintiff appears to disagree with the City's characterization of the lot split. However, the Court sees little, if no, significance to the issue regarding the lot split. Regardless of whether the Court considers the lot size before or after the alleged lot split, the Property was undoubtedly smaller than the required 15,000 square foot minimum lot size required for outdoor auto sales. (Seeba Aff. Ex. 1 at STP 0258-0260, ¶¶ (4)(c) and (5)(d).)

3

Committee unanimously recommended denial of Plaintiff's CUP application. (Seeba Aff. Ex. 1 at STP 0266-0267.)

On July 15, 2005, the Planning Commission met to determine whether Plaintiff's CUP application should be approved. (Seeba Aff. Ex. 2.) The Planning Commission considered the Zoning Committee's strong recommendation to deny the CUP, documented complaints at the Property, and the Property's failure to meet the Code requirements regarding lot size and vehicular access in relation to the intersection. The Planning Commission unanimously denied the CUP. (Seeba Aff. Ex. 2.)

On July 25, 2005, Plaintiff appealed the Planning Commission's decision to the City Council. (Seeba Aff. Ex. 4 at STP 0340-0342.) Plaintiff disputed the previous findings by the Zoning Committee and Planning Commission. (*Id*.) The City Council granted Plaintiff's request for an extension for the public hearing on the appeal. (Seeba Aff. Ex. 4 at STP 0383, 0385.) Plaintiff had notified the City that she was attempting to sell the property and that she had entered into a purchase agreement and would withdraw her appeal. (*Id*. at 0333-0335.) However, the City Council still passed a resolution upholding the denial of the CUP. (*Id*.)

On April 6, 2006, Plaintiff reapplied for a CUP with an application that was, for all practical purposes, identical to the one submitted on June 3, 2005. (Seeba Aff. Ex. 7 at STP 0388, 0407.) The Zoning Committee held a public hearing on April 27, 2006, to review Plaintiff's CUP application. (*Id*. at STP 0407; Seeba Aff. Ex. 8.) Based on the information before the Zoning Committee, the Property still did not meet the minimum lot size for outdoor auto sales and it still had vehicular access within sixty feet of an

intersection. (Seeba Aff. Ex. 8 at 1-2.) In addition, the City had received additional complaints about the Property. (Seeba Aff. Ex. 19 at 2-3.) The Zoning Committee unanimously voted to recommend denial of Plaintiff's CUP application. (Seeba Aff. Ex. 8.)

On May 5, 2006, the Planning Commission met to consider Plaintiff's CUP application. (Seeba Aff. Ex. 7 at STP 0399-0401.) The Planning Commission found that the application still did not meet the standards required for CUPs. (*Id*. at ¶ 4.) The Planning Commission was concerned that the Property was being used to illegally store vehicles, some of which were inoperable. Because auto repairs were not permitted at the property, such storage was illegal. (*Id*. at ¶ (4)(c).) The Planning Commission unanimously denied Plaintiff's CUP application. (*Id*.)

On May 15, 2006, Plaintiff appealed the Planning Commission's denial to the City Council. (Seeba Aff. Ex. 11 at STP 0455.) At that time, Plaintiff stated that the denial was a "financial hardship" because she had prospective buyers who wanted to run the business as a car lot similar to her father, and the denial was impeding her ability to sell the property. (*Id*.) On June 21, 2006, the City Council held a public hearing on Plaintiff's appeal. (Seeba Aff. Ex. 15.) The City Council reviewed the Planning Commission's findings and determined that Plaintiff's applications did not meet the standards required of conditional uses. (Seeba Aff. Ex. 17, ¶ 4.) The City Council also considered the high traffic use associated with outdoor auto sales and auto detailing and the continued improper use of the property. (*Id*. at ¶¶ (4)(a)-(d).) The City Council affirmed the Planning Commission's denial of the CUP. (Seeba Aff. Ex. 17.)

Plaintiff's lawsuit, which was removed to this Court, asserts the following causes of action: violations of substantive due process and equal protection, and inverse condemnation or an illegal taking. Plaintiff contends that the City has not allowed any use of her property since March 2006. (Snaza Aff. ¶ 16.)

## DISCUSSION

### I.  Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v.. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts

6

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Substantive Due Process

The City contends that Plaintiff's substantive due process claims fail because Plaintiff has not identified a protected property interest or any improper government action depriving that interest. Plaintiff, on the other hand, contends that fact issues remain as to whether Plaintiff met all of the requirements to qualify for a CUP. Specifically, Plaintiff asserts that the conditions were met in order for Bernard Snaza to receive a CUP in 1999 and 2002, and that nothing has changed between the 1999 and 2002 issuances of CUPs and when Plaintiff applied in 2005. Plaintiff notes that the lot size of the Property remained the same from 1999 to the time of her CUP application, the driveway location was the same, the City had only denied Plaintiff's application because neighbors opposed it, and the City never conducted a traffic study.

In order to prevail on her substantive due process claims, Plaintiff must first establish "a protected property interest to which the Fourteenth Amendment's due process protection applies." *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070 (8th Cir. 1997) (quoting *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995)) (internal quotations omitted). A protected property interest is determined by state law. *See id*. at 1070. "When an applicant for a conditional use permit complies with specified permit requirements, 'approval of a permitted use follows as a matter of right.'" *Id*. (quoting *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984)).

Here, the Court finds that Plaintiff has not established a protected property interest to support her substantive due process claims. Prior to the issuance of a CUP, the St. Paul Legislative Code requires that the applicant meet certain standards, and here, that the applicant meet specific standards related to outdoor auto sales and auto detailing businesses. *See* City of St. Paul Legislative Code at §§ 61.501 & 65.001, *et seq*. Yet Plaintiff did not meet the Code requirements for lot size and vehicular access from adjacent streets. *See* City of St. Paul Legislative Code §§ 65.703(c) and (d), 65.703(a) and 65.706(b). Undisputedly, the lot size of the Property is less than the required 15,000 square feet. Snaza Aff. at ¶ 5. And Plaintiff also admits that the Property still has a vehicular access point that is less than sixty feet from an intersection. *Id*. Because Plaintiff's property did not meet all of the conditions required for a CUP, approval of the CUP did not follow as a matter of right. Plaintiff has not asserted a protected property interest.

Even if Plaintiff had properly identified a protected property interest, the City asserts that Plaintiff has not established the second element of a substantive due process claim, that the City's actions in denying the CUP were "truly irrational." *Bituminous Materials, Inc.*, 126 F.3d at 1070. "Due process claims involving local land use decisions must demonstrate the 'government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law.'" *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006) (quoting *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993)). "The action must therefore be so egregious or extraordinary as to shock the conscience." *Id*. (citing *County of Sacramento v. Lewis*,

8

523 U.S. 833, 846-47 (1998) and *Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir. 2004)).

Here, the Court agrees that Plaintiff's allegations do not rise to the level of the improper government action necessary to support a substantive due process violation. Plaintiff's CUP application did not meet the conditions for lot size and the location of vehicular entrances required by the City Code for an outdoor auto sales or auto detailing location. *See* St. Paul Legislative Code §§ 65.704, 65.706. As a result, the City's reliance upon these conditions in denying Plaintiff's CUP application is not truly irrational or conscience-shocking. Moreover, to the extent that Plaintiff contends that the City should have modified the standards as it did when granting Bernard Snaza's CUP applications in 1999 and 2002, Plaintiff fails to recognize that the St. Paul Legislative Code allows the Planning Commission to modify the standards for undue hardship.[4] While Plaintiff is correct in recognizing that the Property has not changed in character since Bernard Snaza's CUP applications in 1999 and 2002, Plaintiff, in her 2005 and 2006 CUP applications, never demonstrated the "exceptional undue hardship" that the City noted in allowing Bernard Snaza's CUP. Plaintiff merely stated that this denial

---

[4] The St. Paul Legislative Code states that the Planning Commission:

> may modify any or all special [standards, after public hearing], when strict application of such special [standards] would unreasonably limit or prevent otherwise lawful use of a piece of property or an existing structure and would result in exceptional undue hardship to the owner of such property or structure; provided, that such modification will not impair the intent and purpose of such special condition and is consistent with the health, morals and general welfare of the community and is consistent with reasonable enjoyment of adjacent property. City of St. Paul Legislative Code § 61.502.

9

created financial hardship for her because prospective buyers wanted to run the business as an outdoor auto sales lot or auto-detailing business as it had been used under Bernard Snaza's CUP.  Thus, Plaintiff's assertions of improper government action are misguided in this regard.  And finally, the City properly relied upon neighborhood opposition and several instances of documented illegal use in reaching its denial of Plaintiff's CUP application.  (*See* Seeba Aff. Ex. 1 at STP 0255-0257; Ex. 7 at STP 0423-0426; Ex. 18 at STP 0655 and 0740.)  Plaintiff's CUP application did not meet the requirements for an auto detailing business or outdoor auto sales, and the City's denial of the CUP and its choice to refrain from exercising its discretion to modify the standards was rational and not improper.

Because the Court finds that Plaintiff has not identified a protected property interest or improper government action related to the denial of Plaintiff's CUP application, the City's Motion for Summary Judgment as to Plaintiff's substantive due process claims is granted.  Plaintiff's substantive due process claims are dismissed.

## III.   Equal Protection

The City contends that Plaintiff's equal protection claim fails because Plaintiff cannot demonstrate that any similarly-situated applicant was treated differently.  Plaintiff, on the other hand, contends that she was treated differently than other applicants for conditional use permits in the City of Saint Paul.  Specifically, Plaintiff asserts that the City's 2002 approval of Bernard Snaza's CUP application is evidence of dissimilar treatment of similarly-situated applicants.

A party claiming an equal protection violation that involves neither a suspect class nor a fundamental right must prove that she "was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski*, 435 F.3d at 901 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985); *Klinger v. Dep't of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994); *Bannum, Inc. v. City of St. Charles*, 2 F.3d 267, 271 (8th Cir. 1993)). In order to demonstrate this, Plaintiff must prove "similarity to other individuals or entities receiving favorable treatment." *Id.* (citing *Carter v. Arkansas*, 392 F.3d 965, 968-69 (8th Cir. 2004); *Klinger*, 31 F.3d at 731).

Here, Plaintiff offers no evidence to support the allegation that she was treated differently from similarly-situated CUP applicants. Because of the City's discretionary finding of exceptional undue hardship as to Bernard Snaza, he is not a similarly-situated applicant for purposes of equal protection analysis. Moreover, Plaintiff acknowledges that the City has treated one similarly-situated applicant in a similar manner to Plaintiff: in November 2007, the City denied a CUP application for Gloria Gonzalez, a potential purchaser of the very same Property who sought to use the Property for an outdoor sales lot. (*See* Plaintiff's Mem. in Resp. to Def.'s Mot. For Summ. J. at 3; Snaza Aff. ¶ 19.) For these reasons, Plaintiff's equal protection claim fails and summary judgment is granted in this regard.

**IV.   Taking**[5]

Plaintiff asserts that the City has denied her all beneficial use and enjoyment of the property without just compensation.  The City asserts that Plaintiff's takings claim is not ripe and, further, that Plaintiff does not have a property interest in the CUP.

"[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Koscielski*, 435 F.3d at 903 (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-97, (1985)).  Minnesota has a procedure by which individuals may seek just compensation in the district courts.  *Id.*  (citing *Wilson v. Ramacher*, 352 N.W.2d 389, 394 (Minn.1984); Minn. Stat. § 462.361, subd. 1 (2006) (providing for judicial review by district court)).  Failure to follow such a procedure or have the Minnesota courts rule on an inverse condemnation action renders a taking claim not ripe for review by the federal courts.  *Id.* (citations omitted).

Here, even if Plaintiff's takings claim was ripe for review, Plaintiff's claim fails.  Plaintiff has not offered any case law to support elevating the CUP to private property that is subject to the constitutional provision of taking.  In fact, Minnesota law would lead to the conclusion that a conditional use permit is a government entitlement and not subject to a takings claim.  *See Hay v. City of Andover,* 436 N.W.2d 800, 804 (Minn. Ct. App. 1989) (holding that a special use permit may implicate constitutional restraints, such

---

[5]   As noted by the City, although Plaintiff's Complaint alleges an inverse condemnation claim, the Complaint describes a claim that is generally cognizable under federal takings jurisprudence.

12

as procedural due process and equal protection, but that such a permit is "merely a government entitlement or benefit" not subject to a taking claim). As a result, Plaintiff's takings claim fails in this regard.

Further, Plaintiff has not established that in denying the CUP, the City has deprived her of all economically beneficial use of the property. *See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg.'l Planning Agency,* 535 U.S. 302, 330 (2002). In fact, the City Code provides for a variety of other uses at the Property that the Plaintiff appears to have not considered. *See* City of St. Paul Legislative Code § 66.421.

## V.     Remaining Matters

In her briefing, Plaintiff asserts for the first time that the City denied Plaintiff due process by "revoking the 2002 CUP permit." However, any procedural due process claim is outside the scope of Plaintiff's complaint and, more importantly, would require the Court to adjudicate claims related to Bernard Snaza, who is not a party to this litigation. Thus, to the extent that Plaintiff attempts to assert a procedural due process claim related to Bernard Snaza's CUP application, that claim fails.

The Court believes that it would be in the best interest of the parties to resolve this matter without the expense of further litigation. Although the Court is dismissing Plaintiff's claims, the parties may still utilize the talented services of the Magistrate Judge to negotiate a settlement. If the parties are interested, they may contact Kathy Thobe, Calendar Clerk to Magistrate Judge Arthur J. Boylan, at 651-848-1210.

Thus, **IT IS HEREBY ORDERED** that:

    1.    Defendant City of St. Paul's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**.

    2.    Counts 1, 2, and 3 of the Complaint are (Doc. No. 1) are **DISMISSED WITH PREJUDICE**.

    3.    Count 4 of the Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  February 5, 2008           s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       Judge of United States District Court